UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CCA GLOBAL PARTNERS, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Cause No. 4:06 CV 15 JCH |
| ) | |
| YATES CARPET, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs CCA Global Partners, Inc., FA Cooperative, Inc., and FA Management Enterprises, Inc.'s ("Plaintiffs") Motion to Dismiss Defendant Yates Carpet, Inc.'s ("Yates") Counterclaims, filed May 25, 2006 (Doc. No. 149). The matter is fully briefed and ready for disposition.

**BACKGROUND**

By way of background, Yates is a floor covering business located and incorporated in Texas. (Countercl., Doc. No. 75 ¶ 1). CCA Global ("CCA") is a Delaware corporation with its principal place of business in Missouri. (Id. at ¶ 2). FA Cooperative, Inc. ("FA Cooperative") is a Delaware corporation with its principal place of business in Missouri that operates a floor covering cooperative, which is owned by its member shareholders. (First Am. Compl., Doc. No. 83 ¶ 5). FA Management Enterprises, Inc. ("FA Management"), a Georgia Corporation having its principal place of business in Missouri, is the wholly owned subsidiary of CCA that manages the FA Cooperative. (Id. at ¶ 4).

In 1994, Yates entered into an agreement with Flooring America, Inc.[1] to purchase floor covering products from Flooring America. (Countercl., Doc. No. 75 ¶ 6). In June, 2000 Flooring

---

[1] Flooring America was previously known as Carpet Max; however, for purposes of clarity, both will be referred to as Flooring America.

America filed for bankruptcy in the Northern District of Georgia. (Id. at ¶ 7). In October, 2000 Yates was approached by CCA to become a member of a group program it was forming and was invited to attend a meeting taking place to discuss becoming a member.[2] (Id at ¶ 8). The group program, which would later become FA Cooperative, was conditioned on CCA successfully buying all of the assets of Flooring America. (Id. at ¶ 19).

At the meeting, CCA allegedly told Yates that by joining the program CCA would grant it a license to continue using Flooring America's trademarks and FA Cooperative would negotiate favorable contracts for Yates from vendors. (Id. at ¶ 9). Yates was also told that FA Cooperative would provide access to certain products; negotiate agreements with suppliers of products to get discounted prices or rebates on products; pay Yates a patronage dividend; allow Yates the use of certain trademarks; and develop marketing and advertising programs for use by the members. (Id. at ¶ 10). For Yates, the appeal of joining FA Cooperative was that the cooperative would negotiate better prices than Yates could obtain by itself, which would lower Yates' costs.

Although CCA was unsuccessful in purchasing all of Flooring America's assets, FA Cooperative and Yates entered into a Membership Agreement ("Agreement") on November 7, 2000. (Id. at ¶ 14-16). Only one of Yates' stores (Yates Carpet & Interiors) was subject to the Agreement. The Agreement's relevant provisions stated that FA Cooperative would "use its best efforts" to provide access to certain products; negotiate prices; develop marketing programs; pay patronage dividends; and allow Yates the use of its marks. (Id. at Ex. A). In return, Yates had to buy a certain percentage of his products through the cooperative. (Id.). The Agreement was to last three years and

---

[2]The meeting took place somewhere outside of Texas; neither party has pled the exact location.

early termination would result in penalties. (Id. at ¶17-20). It contained a merger clause[3] and a provision stating that Missouri law would govern the "construction and validity" of the Agreement.(Am. Compl., Doc. No. 83 Ex. 1). Finally, the Agreement required Yates to pay one dollar upon signing and, in return, it would receive a share of stock from the Plaintiffs. (Id. at ¶ 13)[4]. On November 14, 2004, Yates was issued a stock certificate. (Pls.' Memo. Supp. Mot. to Dismiss, Doc. No. 50 Ex. 4).

In 2003, Yates closed Yates Carpet & Interiors and opened a new store at a different location under the name Discount Carpet Warehouse. (Id. at ¶ 22-23). Yates contracted with Mohawk Industries, Inc. ("Mohawk") to supply this store with floor covering products. (Id. at ¶ 24). Plaintiffs tried to persuade Yates to place their products at the new store, but it declined.(Id. at ¶ 26). On January 28, 2004, more than a year after the three year initial membership period expired, Yates terminated its membership in FA Cooperative. (Id. at ¶ 30). Yates terminated its membership because it discovered that it was able to negotiate lower prices on its own. Specifically, the rebates and overbills negotiated by FA Cooperative price drove up the overall cost of products. (Id. at ¶ 31). Yates also believed that Plaintiffs were not paying back the full portion of the rebates; instead, they were investing a portion and making money on them.(Id. at ¶12). Additionally, Yates claims that, in violation of the Agreement, Plaintiffs withheld rebates that Plaintiffs received from purchases made by Yates after the termination of the Agreement. (Id. at ¶ 32-33). Yates also claims that Plaintiffs

---

[3] The Clause states: This Agreement, ... embodies the entire agreement and understanding between the parties relating to the subject matter hereof, supersedes all prior agreements and understandings between the parties, and may be amended only by an instrument in writing executed by the parties hereof and Association. (Doc. No. 83 Ex. 1).

[4] The membership agreement reads: "Upon Member signing this agreement, Member shall pay Company $1.00. The payment of $1.00 shall entitle Member to one share of the stock in Company. Upon any termination of membership in the Company, Member's stock shall immediately be returned to the Company and canceled."

withheld rebates previously earned by Yates after it left the cooperative, in violation of the Agreement. (Id. at ¶ 122).[5] After the termination, Yates signed a release waiving all claims against Plaintiffs; however, Yates claims that the release is void because it was "eventually executed under duress and coercion." (Id. at ¶ 144).

Plaintiffs filed this action on February 8, 2005. (Compl., Doc. No. 1). Yates filed its Motion for Leave to File Counterclaims on December 16, 2005 (Doc. No. 56) and, after being granted leave by the Court on February 3, 2006, filed its Counterclaims on February 3, 2006. (Doc. No. 76). Yates brought the following claims against Plaintiffs: (I) violation of the Texas Deceptive Trade Practices-Consumer Protection Act; (II) violation of the Texas Business Opportunities Act; (III) violation of the Texas Securities Act; (IV) violation of the Federal Securities Act of 1933; (V) breach of fiduciary duty; (VI) common law fraud; (VII) statutory fraud under the Texas Business & Commercial Code; (VIII) breach of contract; (IX) unjust enrichment; (X) negligent misrepresentation; and (XI) attorney's fees. Plaintiffs filed this motion to dismiss counts I-X on May 26, 2006. (Mot. to Dismiss, Doc. No. 149).

## **MOTION TO DISMISS STANDARDS**

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005). A cause of action should not be dismissed for failure to state a claim unless, from the face of the Complaint, it appears beyond a reasonable doubt that Plaintiff can prove no set of facts in support

---

[5]Some of these rebates were those paid to Plaintiffs by third-party suppliers, such as Mohawk. Yates alleges that it was entitled to these rebates in full. (Countercl., Doc. No. 75 ¶ 134).

of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Jackson Sawmill Co., Inc. v. United States, 580 F.2d 302, 306 (8th Cir. 1978). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (internal quotations and citation omitted).

## **DISCUSSION**

### **I. Choice of Law**

As a federal court sitting in diversity, this Court must apply the laws of the State of Missouri. Altru Health Sys. v. Am. Prot. Ins. Co., 238 F.3d 961, 962 (8th Cir. 2001). The Court looks first to decisions of the Missouri Supreme Court. Blum v. Allstate Ins. Co., 296 F. Supp.2d 1037, 1039 (E.D. Mo. 2003). If no relevant decisions are available, the Court will look to Missouri appellate court decisions. Id. The task is "to determine how the Missouri Supreme Court would decide the issue at hand." Id.

The Agreement states that Missouri law governs the construction and validity of the Agreement. As a general rule, Missouri honors the parties' choice of law. Kagan v. Master Home Prods., Ltd., 193 S.W.3d 401, 407 (Mo. Ct. App. 2006). Accordingly, Missouri law applies to the construction and validity of the Agreement.

The Court, however, does not believe that the choice of law provision extends to the non-contractual claims of Yates. Heating & Air Specialists, Inc. v. Jones, 180 F.3d 923, 930 (8th Cir. 1997) (holding that choice of law provision stating "Texas law shall govern its interpretation" was not broad enough to displace Arkansas Franchise Practice Act claims) Usually, the Court would apply the "most significant relationship" test followed by Missouri courts to determine whether Texas or

Missouri law applies. Highwoods Props., Inc. v. Executive Risk Indem., Inc., 407 F.3d 917, 920 (8th Cir. 2006). The Court, however, does not believe enough facts are presently known to engage in a choice of law analysis. Accordingly, the Court will not dismiss any of Yates' non-contractual claims if they can be brought under Missouri or Texas law.

**II. Plaintiffs Argue that All of Yates' Claims are Barred by the Release it Signed**.

Plaintiffs argue that all of Yates' counterclaims are barred by the release Yates signed after terminating the Agreement and that the defenses of coercion and duress are improperly pled.[6] Federal Rule of Civil Procedure 8(f) requires that pleadings should be construed to do substantial justice. See Crumpley-Patterson v. Trinity Lutheran Hosp., 338 F.3d 588, 591 (8th Cir. 2004) (Rule 8 is liberally construed). Additionally, a pleading must merely supply an opposing party with fair notice of the action to withstand a motion under Rule 12(b)(6). Bennett v. Berg, 685 F.2d 1053, 1058 (8th Cir. 1982). Here, Yates' has put Plaintiffs on notice of its duress and coercion defense, and the Court believes that dismissing the entire Counterclaim based solely on this argument would not result in substantial justice.

**III. Plaintiff's Arguments to Dimiss Each Claim**

*Count I: Texas Deceptive Trade Practices Act Claim ("DTPA")*

Plaintiffs argues that Texas law requires the Court to dismiss the DTPA claim because Yates is barred by the statute of limitations, because a mere breach of contract is not enough to satisfy the DTPA, and because Yates cannot prove reliance, as required by the DTPA.

---

[6]Plaintiffs also try to introduce evidence of the terms of this release. In ruling on a motion to dismiss, the Court shall not consider any evidence outside the pleadings; the Court, however, has discretion to considers material that are necessarily embraced by the pleadings. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 n. 4 (8th Cir. 2003). The Court declines to exercise this discretion.

Claims under the DTPA, which was enacted to prevent misleading and deceptive trade practices, have a two year statute of limitations. Tex. Bus. & Com. Code § 17.565. Specifically, DTPA claims must be brought within two years of the date on which the deceptive practices or acts occurred or within two years of when the claimant discovered, or should have discovered through "reasonable diligence," the occurrence of the deceptive practices or acts. Id. This "discovery rule" does not requires actual knowledge; rather it asks whether the claimant had "knowledge of facts which would cause a reasonable person to diligently make inquiry into the determination of his or her rights." Texas Soil Recycling, Inc. v. Intercargo Ins. Co., 273 F.3d 644, 649 (5th Cir. 2001) (applying Texas law).

Here, it is not beyond a reasonable doubt that Yates can prove a set of facts showing it filed its cause of action within the two year statute of limitations. Specifically, Yates has pled that it terminated the Agreement on January 28, 2004 because it discovered that it could obtain lower prices outside of FA Cooperative. (Countercl., Doc. No. 75 ¶ 30-31). The Court is required to draw the favorable inference that Yates terminated the agreement on the same day as the alleged fraud became discoverable with reasonable diligence. Accordingly, Yates would have until January 28, 2006 to file its counterclaim. Yates' Counterclaim was filed within that time.[7]

Under the DTPA, detrimental reliance is an essential element to maintaining an action. Tex. Bus. & Com. Code § 17.50(a)(1)(B). Texas courts, however, have held that a contract containing

---

[7] Yates filed for a motion for leave to First Amended Answer and Counterclaim on December 15, 2005. (Doc. No. 56). The Amended Answer and Counterclaim, however, was not filed until February 3, 2006 because the Court did not rule on Yates' motion until that date. According to Eighth Circuit law, the Court should deem this Amended Answer and Counterclaim as filed before the statute of limitations expires. Mayes v. AT &T Information Systems, Inc., 867 F.2d 1172, 1173 (1989); accord Moore v. State of Indiana, 999 F.2d 1125, 1131 (7th Cir. 1993); see also Boarhead Farm Agreement v. Advanced Envtl. Tech. Corp, 318 F. Supp. 2d 427, 431 n. 2 (E.D. Pa. 2005) (collecting authority).

a merger clause may prevent a party from proving reliance. <u>Spring Window Fashion Div., Inc. v. Blind Maker, Inc.</u>, 184 S.W.3d 840, 869-71 (Tex. App. 2006) (providing in depth discussion of Texas law regarding merger clauses and, in the context of a DTPA claim, applying that law); <u>see also Simpson v. Woodbridge Props., L.L.C.</u>, 153 S.W.3d 682, 684 (Tex. App. 2004). Merger clauses, however, do not always bar a claim of fraudulent inducement <u>Schlumberger Tech. Corp. v. Swanson</u>, 959 S.W.2d 171, 181 (Tex. 1997) and the Court must also consider the nature of the transaction and the surrounding circumstances. <u>Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.</u>, 896 S.W.2d 156, 162 (Tex. 1995) (discussing an "as is" clause). The key issue becomes whether or not the agreement covers the same subject matter as the previous representations. <u>Texas Taco Cabana, L.P. v. Taco Cabana of New Mexico</u>, 204 F. Supp. 2d 903, 910-11 (W.D. Tex. 2003) (applying Texas law).

Here, the merger clause states the Agreement evidences the "entire agreement and understanding between the parties relating to the subject matter hereof" and "supersedes all prior agreements, and understandings between the parties." Yates alleges that it was fraudulently induced into joining because the purchasing program and membership did not have the characteristic of lower prices that had been promised. (Countercl., Doc. No. 75). Here it is not beyond a reasonable doubt that Yates can prove some set of facts that shows the subject matter of the merger clause and the previous representations do not completely coincide. Accordingly, some or all of the representations made by Plaintiffs may fall outside the scope of Agreement.

Finally, under the DTPA a mere breach of contract is not actionable. <u>Crawford v. Ace Sign, Inc.</u>, 917 S.W.2d 12, 14 (Tex. 1996). Texas Courts have explained that an alternative interpretation of a contract does not fall within the DTPA. <u>Munawar v. Cadle Co.</u>, 2 S.W.3d 12, 18-19 (Tex. App. 1999). The DTPA, however, is to be liberally construed to protect consumers. <u>Id.</u> at 19, citing

Weitzel v. Barnes, 691 S.W.2d 598, 601 (Tex. 1985). In determining whether a breach of contract rises to the level of misrepresentation is a fact-driven inquiry. Cont'l Dredging, Inc. v. De-Kaizered, Inc., 120 S.W.3d 380, 389 (Tex .App. 2003).

Here, Yates sufficiently alleges something more than a breach of contract. Yates alleges that it was induced into signing the contract by fraudulent misrepresentations. For purposes of a motion to dismiss, the Court must assume this fact is true. Texas courts have found that actions similar to this allegation fall under the DTPA. See Munawar, 2 S.W.3d at 19 (misrepresentation of property ownership actionable under DTPA); see also Tribble & Stevens Co. v. RGM Constructors, L.P., 154 S.W.3d 639, 661 (Tex. App. 2004) (misrepresentation of who would perform contract actionable under DTPA). Accordingly, Plaintiffs' Motion to Dismiss as it relates to Count I must be denied.[8]

**Count II: Texas Business Opportunity Act ("BOA")**

Under Texas law, Plaintiffs argue that the four year statute of limitations bars Yates' action. Second, Plaintiffs argues that Yates' BOA claim fails because the relationship between the parties does not meet the definition of "business opportunity." The Court finds the second argument persuasive.

The BOA defines a "business opportunity" as "the sale or lease for an initial consideration of more than $500 of products, equipment, supplies, or services that will be used by or for the purchaser to begin a business in which the seller represents ..." Tex Bus. & Com. Code § 41.004. The statute provides that a business opportunity does not include:

> (5) a sale or lease to a business enterprise that also sells or leases equipment, products, and supplies or performs services: (A) that are not supplied by the seller;

---

[8] The Court does not reach the scenario of how this claim is effected if Missouri law is applied because the Court is using an either-or test to analyze this motion to dismiss. As long as the Court finds an action can be brought under Missouri or Texas law, the claim survives the motion.

- 9 -

and (B) that the purchaser does not use with the equipment, products, supplies or services of the seller.

Id. at § 41.004(b)(5). This provision's plain language places Yates outside the statutory boundaries provided in the BOA. Monsanto Co. v. Cornerstones Mun. Util. Dist., 865 S.W.2d 937, 939 (Tex. 1993) (if a statute is unambiguous, legislative intent is determined from the plain and common meanings of the words of the statute). Only one case has interpreted this statutory provision. It found that where a plaintiff has sold and leased, and has been free to sell and lease equipment, products, and supplies from other manufacturers, § 41.004(b)(5) dictates that the BOA does not apply to that plaintiff. Southwest Materials Handling Co. v. Nissan Motor Co., Ltd., No. Civ.A.3:98-CV-2367-X, 2000 WL 1664160 at *5 (N.D. Tex., Nov. 3, 2000) (unpublished decision). The facts presented in the Counterclaim are similar. Yates bought some, but not all, of its products from the Plaintiffs and was free to buy products outside of the Agreement. The Court sees no reason to depart from Southwest Materials' interpretation. Thus, § 41.004(b)(5) precludes application of the BOA to Yates.

Plaintiff posits that Yates cannot bring an action for a Texas statute under Missouri law because Texas statutes have no extraterritorial effect. The Court, however, need not reach this argument because applying Missouri law will not change the fact that Yates' claim fails to meet the requirements of the statute. Accordingly, Count II will be dismissed.

**Count III: Texas Securities Act**

Plaintiffs argue that Yates' claim under the Texas Securities Act is barred by the limitations set forth in Tex. Rev. Civ. Stat. Art. 581-33H(2)(b). Both parties agree that Yates' claim is for an action under Article 581-33A(2). The applicable statute of limitations, found in Article 581-33H(2)(b), states: "No person may sue under section 33A(2) ... (b) more than five years after the sale." The Agreement plainly states that upon signing, the member is to pay one dollar. Thus, when Yates signed the Agreement on November 7, 2000, the stock was sold to him. Furthermore, the

Plaintiffs have introduced a copy of Yates' stock certificate showing that it was issued on November 14, 2000.[9] Thus, the five year statute of limitations started running, at the latest, on November 14, 2000. Yates did not file its claim until December 16, 2005, five years and a month after the sale occurred. Yates' Texas Securities Act claim is time barred.

Plaintiff posits that Yates cannot bring an action for a Texas statute under Missouri law because Texas statutes have no extraterritorial effect. The Court, however, need not reach this argument because applying Missouri law will not change the fact that Yates' claim is time barred. Accordingly, Count III will be dismissed.

**Count IV: Federal Securities Act**

Plaintiffs contend that Yates' Federal Securities Act claim fails because it is time barred. Neither party disputes that 15 U.S.C. § 77m is the relevant statute of limitation. It provides:

> No action shall be maintained to enforce any liability created section 77k or 77l(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or if the action is to enforce a liability created under section 77l(a)(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the sale.

As the statute clearly indicates, a plaintiff must sue within three years of the sale, regardless of whether or not the violation has been discovered. As stated previously, the sale took place by November 14, 2000. Thus, an action under the Federal Securities Act became time barred on

---

[9]The Court finds that the stock certificate is necessarily embraced by the pleadings because it is an integral part of Yates' claim. Accordingly, the Court may look to it without converting this motion to dismiss into a motion for summary judgment. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 n. 4 (8th Cir. 2003)

November 14, 2003. Yates did not file its Federal Securities Act claim until December 16, 2005. Yates' claim under the Federal Securities Act must be dismissed.

**Count V: Breach of Fiduciary Duty**

Plaintiffs argue that under either Missouri or Texas law, a fiduciary relationship never existed between Yates and the Plaintiffs. Yates argues that Plaintiffs were Yates' agent, meaning that a fiduciary relationship existed. As discussed below, the Court finds the Plaintiffs' argument persuasive.

Texas recognizes two types of fiduciary relationships: formal relationships created as a matter of law, such as those of a partner, agent, or trustee Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex. 1998), and informal relationships that arise "from a moral, social, domestic, or purely personal relationship of trust and confidence, generally called a confidential relationship." Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 287 (Tex. 1998). These relationships are not recognized lightly, and usually arise when one party has dealt with another for a long period of time such that one party is justified in expecting the other to act in its best interests. Burleson State Bank v. Plunkett, 27 S.W.3d 605, 611 (Tex. App. 2000). Furthermore, the fact that one businessman trusts another and relies on him to perform a contract does not give rise to a confidential relationship; something more is required. Exxon Corp. v. Breezevale Ltd., 82 S.W.3d 429, 443 (Tex. App. 2002); see also Evans v. United Airlines, Inc., 986 F.2d 942, 945 (5th Cir. 1993), citing Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591 (Tex. 1992) (superseded by statute on different grounds).

Yates' agency argument fails because the Agreement expressly states that "the relationship created by this Agreement shall not be construed as an agency." (Doc. No. 150 Ex. 2 at XI(A)).[10]

---

[10]Yates argues that Robles v. Consol. Graphics, Inc., 965 S.W.2d 552, 558 n. 4 (Tex. App. 1997) (holding an individual who negotiates contracts for a printing company was the company's agent) and Rauscher Pierce Refnes, Inc. v. Great Southwest Savings, F.A., 923 S.W.2d 112 (Tex.

Texas holds the freedom to contract sacred and will not interfere with it lightly. BMG Direct Mktg., Inc. v. Peake, 178 S.W.2d 763, 767 (Tex. 2005). Furthermore, Yates has plead nothing more than a purely contractual business relationship with Plaintiffs. Yates does not allege that he had any social, moral, domestic, or personal relationship with the Plaintiffs that would lead to an unusual level of trust and confidence. Texas law clearly dictates that a business relationship such as the one between the parties does not rise to the level of a fiduciary relationship.

Like Texas, Missouri recognizes two types of fiduciary relationships: those created as a matter of law and those based on a five element test. Fiduciary relationships may arise as a matter of law where, by virtue of the parties relationship, one party places trust in another so that the latter gains superiority and influence over the former. See A.G. Edwards & Sons, Inc. v. Drew, 978 S.W.2d 386, 394-95 (Mo. Ct. App. 1998). Examples of fiduciary relationships that arise as a matter of law are attorney-client, patient-physician, principal-agent, and insurance broker-insured. See id.; cf. Hall v. Nationsbank, 26 S.W.3d 295, 297 (Mo. App. 2000) (lender-borrower relationship does not give rise to a fiduciary relationship); Chmieleski v. City Prods. Corp., 660 S.W.2d 275, 292 (Mo. App. 1983) (no fiduciary relationship between franchisee-franchiser). In the absence of a relationship arising as a matter of law, the elements of a fiduciary relationship are:

> (1) one party must be subservient to the dominant mind and will of the other party as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, ... must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic and habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places and trust and confidence in the dominant party.

---

App. 1996) (finding a fiduciary relationship where loan broker was the plaintiff's exclusive agent) dictate a finding of an agency relationship. These cases are distinguishable because neither specifically disclaimed an agency relationship.

Matlock v. Matlock, 815 S.W.2d 110, 115 (Mo. App. 1991).

Here, no fiduciary relationship has arisen as a matter of Missouri law. Like Texas, Missouri respects the freedom of contract. See Purcell Tire & Rubber Co. v. Executive Beechcraft, Inc., 59 S.W.3d 505, 509 (Mo. 2001) (sophisticated parties have freedom of contract, even to make bad bargains or relinquish fundamental rights); Blackstock v. Kohn, 994 S.W.2d 947, 954 (Mo. 1999) (Missouri encourages freedom of contract). As stated previously, the Agreement forecloses a finding of an agency relationship. The Court has found no Missouri law holding a cooperative and its member are in a fiduciary relationship as a matter of law.[11] In fact, the closest example, that of a franchisee-franchiser, has been held not to create a fiduciary relationship. Chmieleski., 660 S.W.2d at 292. Additionally, the pleadings fail to establish that Yates was subservient to Plaintiffs as the result of health, age, illiteracy, ignorance, or mental disability. The interactions between the parties seems like nothing more than a business relationship between two sophisticated parties. Accordingly, Yates' breach of fiduciary duty case must be dismissed because neither Texas or Missouri recognizes the existence of fiduciary relationship arising from a cooperative-member contractual relationship.

### **Count VI-VII:Texas Statutory Fraud and Common Law Fraud**

Plaintiffs make three arguments as to why Yates' actions for common law and Texas statutory fraud must be dismissed. First, Plaintiffs argue that the fraud has not been pled with particularity.

---

[11]One Missouri case has held that the relationship between a farmer and a farm cooperative association where the cooperative acted as a creditors not a fiduciary relationship. Yoest v. Farm Credit Bank of Saint Louis, 832 S.W.2d 325 (Mo. Ct. App. 1992). The Court, however, does not treat this case as controlling because the nature of the relationship, that of creditor-debtor, is different than the relationship between Plaintiffs and Yates.

Second, Plaintiffs argue that the claims are time barred. Finally, Plaintiffs argue that Yates has only alleged that it made future promises, which are not actionable in a claim for fraud.[12]

Federal Rule of Civil Procedure 9(b) requires that all "averments of fraud ... shall be pleaded with particularity." To satisfy this rule, the complaint must "plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including who engaged in them, and what was obtained as a result." United States ex rel. Joshi v. Saint Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006). More plainly, the complaint must identify the "who, what, where, when, and how" of the alleged fraud. United States ex rel. Costner v. United States, 317 F.3d 883, 888 (8th Cir. 2003). Yates' Counterclaim meets that burden. Yates has pled that the alleged fraud occurred at the out of state meeting in October, 2000 (the where and when) (Countercl., Doc. No. 75 ¶ 8-10). Yates has also pled that CCA Global made representations to them at a meeting that by joining the cooperative, the Plaintiffs would negotiate lower prices for them (the who, how, and what). (Id. at ¶ 8-10, 114-17, 119-23). Accordingly, Yates' pleading meets the required burden.

The statue of limitations for fraud is five years in Missouri, Mo. Rev. Stat. § 516.120(5), and four years in Texas. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4). Furthermore, both states apply a discovery rule, meaning that for purposes of this case, the statute of limitations does not start running until Yates discovered, or would have discovered with reasonable diligence, the alleged fraudulent behavior of Plaintiffs. See Schwartz v. Lawson, 797 S.W.2d 828, 832 (Mo. Ct. App. 1990) ; see also Texas Soil Recycling, Inc., 273 F.3d at 649 (applying Texas law). As explained previously, Yates has

---

[12]The Plaintiffs also argue that Yates was not allowed to rely on the misrepresentations by the merger clause, and therefore, have failed to prove one element of fraud. The Court finds this argument unpersuasive and the Court has already held that at this stage of the litigation, it will not find the merger clause precluded all claims of misrepresentation.

pled that it did not discover the fraudulent behavior until January, 2004. For purposes of a motion to dismiss, the Court must accept this alleged fact as true. Although the Plaintiffs argue that Yates should have discovered any alleged fraud long before this time, the Court believes that it is not beyond a reasonable doubt that Yates can prove some set of facts to show it was not discoverable until January, 2004.

Both Missouri and Texas require that to constitute fraud, an alleged misrepresentation must relate to a past or existing fact. Arnold v. Erkmann, 934 S.W.2d 621, 626 (Mo. Ct. App. 1996); McGoldrick v. Mahoney, 654 S.W.2d 570, 575-76 (Tex. App. 1983). Furthermore, predictions of future success and profitability cannot support a claim of fraud. See Zar v. Omni Indus., Inc., 813 F.2d 689, 693 (5th Cir. 1987) (applying Texas law); O'Neal v. Stifel, Nicolaus & Co., Inc., 996 S.W.2d 700, 703-04 (Mo. Ct. App. 1999). In Missouri, an unkept promise may constitute an actionable claim of fraud if its accompanied by a present intent not to perform; this mis-representation of a present state of mind is a misrepresentation of an existing fact. Thoroughbred Ford, Inc. v. Ford Motor Co., 908 S.W.2d 719, 732 (Mo. Ct. App. 1995). Texas has a similar rule that a future prediction is actionable as fraud if the prediction was made with present knowledge that the statement is false or with a present intent to deceive. Bryant v. Transcon. Gas Pipe Line Corp., 821 S.W.2d 187, 190 (Tex. App. 1991).

Yates' allegations, read in light of the standard for a motion to dismiss, allege a misrepresentation of existing facts. Specifically, Yates alleges that there were misrepresentations made about the nature of the cooperative and that Plaintiffs had actual knowledge of the falsity of these statements. (Countercl., Doc. No. 75 ¶ 9-13, 122). Drawing all reasonable inferences in Yates' favor, the Counterclaim alleges that Plaintiffs misrepresented an existing fact: its present state of mind. Thus, Yates' fraud claims will not be dismissed.

**Count VIII: Breach of Contract**

Yates has pled that Plaintiffs breached the Agreement by failing to pay Yates all the rebates it was entitled to after termination of the Agreement. Plaintiffs argue that no breach of contract can exist because they had a right to use any remaining, unpaid rebates to pay outstanding obligations. The Court does not find the Plaintiffs' argument persuasive.

In Missouri, to recover for breach of contract, a plaintiff must prove 1) the existence of a contract; 2) the rights and obligations of the respective parties; 3) a breach; and 4) damages. Howe v. ALD Servs., Inc., 941 S.W.2d 645, 650 (Mo. Ct. App. 1997). Yates has pled all four elements. First, it pled the existence of the Agreement, which was a contract. (Countercl., Doc. No. 75 ¶ 16). Second, it pled that one of the rights of a member was the ability to leave the cooperative without any additional payment or fee after three years. (Id. at ¶ 126). Plaintiff stayed in the cooperative for four years. (Id. at ¶ 127). Third, Yates alleges that Plaintiffs have failed to account for rebates that are owed to Yates. (Id. at ¶ 33). Fourth, Yates has pled that it suffered damages from this breach. (Id. at ¶129). It is not beyond a reasonable doubt that the pleading facts will prove Plaintiffs breached the Agreement. Furthermore, Plaintiffs' argument is highly factual, and not appropriate at this stage of the litigation. Accordingly, Plaintiffs' motion to dismiss this count will be denied.

**Count IX: Unjust Enrichment**

Plaintiffs argue that Yates fails to state a claim for unjust enrichment upon which relief can be granted because Yates did not directly confer the benefit of rebates onto the Plaintiffs.

In Missouri, a claim of unjust enrichment requires a plaintiff to prove 1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of the fact of such benefit and 3) acceptance and retention of the benefit by defendant under circumstances where retaining it would be unjust. Mays-Maune & Assocs., Inc. v. Werner Bros., Inc., 139 S.W.3d 201, 205 (Mo. Ct. App.

2004). Similarly, Texas law requires that a plaintiff must prove that the defendant benefitted from the plaintiff through fraud, duress or the taking of undue advantage. Fondren Const. Co., Inc. v. Braircliff Hous. Dev. Assocs., Inc., 196 S.W.3d 210, 218 (Tex. App. 2006). Here, the mere fact the Plaintiff received the rebates directly from the suppliers instead of from Yates is meaningless for purposes of an unjust enrichment claim. No rebates, i.e. no benefit, would have been conferred upon the Plaintiffs without Yates' purchases. Furthermore, if these payments actually occurred after the Agreement terminated, it would be unjust for the Plaintiffs to keep them. Plaintiffs' motion as to this count must be denied.

### Count X: Negligent Misrepresentation

Plaintiffs posits four arguments as to why the negligent misrepresentation action should be dismissed. It argues that this action is time barred, that Yates cannot prove the required reliance,[13] that the alleged misrepresentations do not relate to past or existing facts,[14] and that Yates has not alleged damages independent from its breach of contract claim.

Texas applies a two year statute of limitations to claims for negligent misrepresentation; however, the discovery rule applies to negligent misrepresentation claims. Sabine Towing & Transp. Co., Inc. v. Holliday Ins. Agency, Inc., 54 S.W.3d 57, 61 (Tex. App. 2001). Missouri applies a five year statute of limitations; however, it only starts to run when the damage is sustained and capable of ascertainment. Mo. Rev. Stat. § 516.120(4); Olean Assocs., Inc. v. Knights of Columbus, 5 S.W.3d 518, 521-22 (Mo. Ct. App. 1999). As stated previously, it is not beyond a reasonable doubt that the alleged misrepresentations only became discoverable in January, 2004. Yates filed its claim

---

[13] The Court has already discussed this reliance argument in the context of the DTPA claims and believes any further discussion of it would be needlessly repetitive.

[14] The Court has already discussed this existing fact, future prediction argument with respect to the fraud and believes any further discussion would be needlessly repetitive.

on December 16, 2005. Under either statute of limitations, Yates's filing was timely. Yates' negligent misrepresentation claim will not be dismissed based on this argument.

Finally, Plaintiffs argue that Yates' negligent misrepresentation action cannot be brought because it has not pled damages that are independent from its contractual, or benefit of the bargain, damages as required by the Restatement (Second) of Torts §552. While Plaintiff is correct that Texas has adopted this rule, D.S.A., Inc. v. Hillsboro Indep. Sch. Dist., 973 S.W.2d 662, 663-63 (Tex. 1998), Missouri has not. See B.L. Jet Sales, Inc. v. Alton Packaging Corp., 724 S.W.2d 669, 673 (Mo. Ct. App. 1987) (quoting the Restatement, but not adopting it). Accordingly, an action based on the damages pled is still sufficient under Missouri law to bring a claim for negligent misrepresentation.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Dismiss (Doc. No. 149) Counts II-V of Defendant Yates Carpet, Inc.'s Counterclaims is **GRANTED** and Defendant's claims are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Dismiss (Doc. No. 149) Counts I, VI-X of Defendant Yates Carpet, Inc.'s Counterclaim is **DENIED**.

An appropriate judgment will accompany this order and memorandum.

Dated this 5th day of October, 2006

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE